IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                             Cr. No.  10-20385 Ma

CHARLES KIZER,

        Defendant.

**DEFENDANT'S POSITION WITH
REGARD TO SENTENCING FACTORS
AND SENTENCING MEMORANDUM**

COMES NOW, Defendant Charles Kizer, by and through his appointed counsel, Randolph W. Alden, Assistant Federal Public Defender, pursuant to Rule 32 of the Federal Rules of Criminal Procedure and Local Criminal Rule 32.1, and submits the following with respect to sentencing in this case.

**I.    Defense Counsel Certification**

Counsel received Mr. Kizer's Presentence Investigation Report ("PSR") on or about November 4, 2011.  Counsel and Mr. Kizer have each reviewed this document. Counsel has communicated the following position to the probation officer and Assistant United States Attorney in the form of a copy of this document.

**II.    The Sentencing Hearing**

Given the facts of this particular case, it is likely that the hearing will last in excess of thirty minutes and depending on how many witnesses the United States

1

intends to call it could be a lengthy hearing.

## III.    Sentencing Factors in Dispute

### A.    Factual Objections

Mr. Kizer objects to the facts stated in paragraph 2 of the PSR which are incorrect in stating that he consented to the forfeiture set forth in Count 6 of the Indictment. The Plea Agreement and the minutes from the Plea Hearing both indicate that Count 6 was dismissed. (R-59, Minutes from Plea Hr'g; R-60, Plea Agreement.)

Mr. Kizer objects to the facts stated in paragraphs 6 and 10 of the PSR to the extent that sexual assault is alleged. Mr. Kizer denies ever sexually assaulting A.W.

Mr. Kizer objects to the facts stated in paragraph 9 of the PSR in that there was no gun found.

Mr. Kizer objects to the facts stated in paragraph 9 of the PSR to the extent that he did not get a puppy for A.W.

Mr. Kizer objects to the facts stated in paragraphs 13 and 29-31 being in the PSR at all.

Mr. Kizer objects to the facts stated in paragraph 33 of the PSR, as the facts are taken from an arrest warrant. Information taken from an arrest warrant does not have a "sufficient indicia of reliability to support its probable accuracy" and should not be used to form the basis of any factor important to a sentencing determination. See USSG § 6A1.3(a). At least one federal court has determined that arrest warrants are an "untested source." See United States v. Richardson, 161 F.3d 728, 738 (D.C. Cir. 1998)

(explaining under the Career Offender Guidelines how the district court erred when its sentencing enhancement was based on the description of a prior conviction in a presentence report where "there was simply no way of knowing at sentencing whether [the] description was obtained from a legitimate and reliable source, such as a charging document, a plea agreement, or a previous presentence investigation report adopted by the state court . . . or whether this description came from an untested source, such as an arrest warrant, a police report, or a prosecutor's proffer."); see also United States v. Price, 409 F.3d 436, 445 (D.C. Cir. 2005) (citing Richardson). Mr. Kizer respectfully requests that any information reference to warrants be taken out of the PSR.

Mr. Kizer objects to the facts stated in paragraphs 62 and 63 of the PSR, referencing a pending citation and outstanding bench warrants, for the same reason he objected to the facts stated in paragraph 33 of the PSR. Mr. Kizer therefore incorporates by reference as though fully set forth herein his arguments supporting his objection to paragraph 33.

**B.    Legal Objections**

**1.    The facts stated in paragraphs 6, 10, 13, and 29-31 of the PSR do not constitute relevant conduct.**

Mr. Kizer objects to use of the facts stated in paragraphs 6 and 10, as well as paragraphs 13, and 29-31 as relevant conduct. Relevant conduct is addressed under USSG § 1B1.3. The PSR does not specify which section of USSG § 1B1.3 applies. Under USSG § 1B1.3(a)(1), the relevant conduct must have occurred "during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting

to avoid detection or responsibility for that offense."

The acts described in paragraphs 6 and 10 of the PSR address alleged sexual assaults, which do not constitute the offense of conviction -- interstate transportation of A.W. for prostitution. Moreover, Mr. Kizer denies that he engaged in such conduct. The government bears the burden of proving relevant conduct by a preponderance of the evidence. See United States v. Njemanze, No. 91-1630, 1992 U.S. App. LEXIS 8282, *5 (6th Cir. Apr. 17, 1992) (unpublished) (citation omitted).

The acts alleged in paragraphs 13 and 29-31 all occurred in 2007 (PSR, at ¶ 29), three years prior to the offense of conviction. Consequently, the offenses described in those paragraphs cannot be properly attributed to Mr. Kizer under Section 1B1.3(a)(1) because temporally, it was impossible for the acts to have occurred during the offense of conviction, in preparation for that offense, or in the course of attempting to avoid that offense.

Section 1B1.3(a)(2) governs the calculation of relevant conduct for "offenses of a character for which § 3D1.2(d) would require grouping of multiple counts." USSG § 3D1.2 specifically does not apply to offenses covered by the guidelines for criminal sexual abuse or attempt to commit sexual abuse (USSG § 2A3.1), or promoting commercial sex acts or prohibited sexual conduct, USSG § 2G1.1. See USSG § 3D1.2(d). These are the Guidelines under which the PSR officer calculated Mr. Kizer's sentence. (PSR, at ¶¶ 18-21.) Consequently, the provisions of USSG § 1B1.3(a)(2) are inapplicable in Mr. Kizer's case.

4

**2.    The vulnerable victim enhancement is not applicable as the victim in this case was not unusually vulnerable.**

Mr. Kizer objects to application of the vulnerable victim enhancement under USSG § 3A1.1(b)(1).  (PSR, at ¶ 22.)  The Guideline provides a two-level enhancement where a defendant knew or should have known that the victim was vulnerable.  Id. Application Note 2 to the vulnerable victim guideline requires that the victim must be "unusually vulnerable due to age, physical or mental condition, or . . . otherwise particularly susceptible to the criminal conduct."  USSG § 3A1.1 cmt. n.2.  Neither the Guideline, nor its accompanying Commentary provide a bright line test to follow in determining whether to apply the adjustment, but the Sixth Circuit has held that the use of the term "unusually" creates a heightened threshold of proof for application of this provision.  See United States v. Robinson, 152 F.3d 507, 511 (6th Cir. 1998).

While the Sixth Circuit has rejected arguments that there must exist an extra quantum of depravity before the enhancement can be applied, it has found that so long as the defendant knew or should have known that the victim is unusually vulnerable the district court can give him an "extra dollop of punishment."  United States v. McCaster, 333 F. App'x 970, 974 (2009) (unpublished) (citation omitted) (eschewing a standard requiring extra depravity, but nonetheless finding extra depravity where robber pistol whipped mother in front of her two-year-old child).  Other circuits have noted this standard in a similar manner.  For instance, the Ninth Circuit has stated. "The theory behind the vulnerable victim enhancement is that conduct against the particular victim or group of victims is more blameworthy than the conduct of other

5

offenders and thus deserves greater punishment." United States v. Castaneda, 239 F.3d 978, 980 (9th Cir. 2001). The Tenth Circuit has held that "the evidence must . . . distinguish the victim as atypical of the usual targets of the relevant criminal conduct." United States v. Caballero, 277 F.3d 1235, 1251 (10th Cir. 2002); see also United States v. Sabatino, 943 F.2d 94, 103 (1st Cir. 1991) (in order for enhancement to apply to Mann Act offenses, the victim must be vulnerable to a degree beyond that already contemplated by the offense).

    In Mr. Kizer's case, the facts do not support an argument that the victim was unusually vulnerable beyond that already contemplated by the offense. It is true that the vulnerable victim enhancement has been applied in prostitution cases, but typically only where the girls were juveniles and had some other disadvantage, such as a disability. See e.g., United States v. Robinson, 436 F. App'x 82, 83 (3d Cir. 2011) (unpublished) (conspiracy to prostitute over 40 juveniles, including a 12 year old, a girl with a cognitive impairment, homeless girl and those from troubled or dysfunctional families); United States v. Monsalves, 342 F. App'x 451, 457-58 (11th Cir. 2009) (sex trafficking case where women targeted for prostitution were illegal aliens with no identity papers, no jobs or income for basic necessity, spoke no English and had no contacts in the United States); United States v. McMillon, 347 F. App'x 326 (9th Cir. 2009) (unpublished) (victim's small size and stature and history of sexual assault and abandonment made her uniquely vulnerable); United States v. Scott, 529 F.3d 1290, (10th Cir. 2008) (defendant should have known that 13-year-old victim was unusually

petite and frail for her age and generally immature and naive, making her more

susceptible to trafficking than the average 12 to 16 year old); United States v. Julian, 427

F.3d 471, 489-90 (7th Cir. 2005) (pedophile sex tourism case where defendant preyed on

Alcapulco's street children, taking advantage of their poor and homeless status by

offering shelter, housing and food); United States v. Evans, 285 F.3d 664, 672 (8th Cir.

2002) (juvenile victim with no parental guidance who had spent time living in runaway

facilities).

 In Sabatino, the First Circuit addressed the application of the vulnerable victim

enhancement to the prostitution provision of the Mann Act.  There, the district court

applied § 3A1.1 to the sentences of a husband and wife team convicted of violating the

Act by running an interstate escort service.  The district court based the enhancement

on its finding that of the prostitutes employed by the Sabatinos, some were only

teenagers, two were mothers of small children, and many were out of work and in need

of a job.  943 F.2d at 103.  The First Circuit held that the vulnerable victim enhancement

did not apply because the Sabatinos' victims were not unusually vulnerable "given the

kind of victim that is typically involved in a Mann Act violation and that Congress

aimed to protect."  Id.  The Sabatino court discussed the legislative history of the Mann

Act at length and concluded that "the Act embodied a paternalistic attitude concerned

with the protection of women and girls who, because of their innocence, their hard

lives, and their vulnerability, were particularly susceptible to becoming victims of

unscrupulous men and women who would take advantage of their situation for

immoral purposes." <u>Id.</u>  The First Circuit concluded that the "vulnerable" factors

suggested by the government -- that the victims were out of work and needed a job,

that some had small children and were themselves practically children, and that the

combination of these factors created an "economic dependency" -- were typical of the

victims the Mann Act was designed to protect, and therefore that a § 3A1.1

enhancement was inappropriate.  <u>Id.</u>  Mr. Kizer urges this court to find in a similar

manner as the well-reasoned opinion in <u>Sabatino</u> and decline to apply the enhancement,

as the victim in this case is typical of the victims the Mann Act was originally enacted to

protect.

> **3.    The PSR improperly eviscerates the intent of the parties' Plea Agreement through application of the obstruction of justice enhancement.**

On August 31, 2011, a plea agreement was filed in this case.  (R-60, Plea

Agreement.)  The Agreement provided in relevant part:

> Given the facts in possession of the United States at the time of the writing of this agreement, the United States does not oppose the [d]efendant receiving acceptance of responsibility credit pursuant to U.S.S.G. Section 3E1.1.  The Defendant understands that if the United States receives information between the signing of this agreement and the time of sentencing that the [d]efendant has previously engaged in, or if he engages in the future, in conduct inconsistent with the acceptance of responsibility, including, but not limited to, participation of [sic] any additional criminal activities between now and the time of sentencing, this position could change.

(R-60, Plea Agreement, at 1-2.)

Without providing any dates, the PSR notes seven calls made by Mr. Kizer while

he was incarcerated in the Shelby County Jail.  (PSR, at ¶ 12.)  During several of these

calls, Mr. Kizer told the person called to advise A.W., the victim in this case, to avoid coming to court and to go home.  Id.   The PSR applied the obstruction of justice enhancement provided under USSG § 3C1.1 , presumably based upon these calls, since the PSR does not specify why the obstruction enhancement was applied.  (PSR, at ¶  24.) The PSR also provides that pursuant to USSG § 3E1.1 Application Note 4, conduct resulting in enhancement under USSG § 3C1.1 ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct.  (PSR, at ¶ 27.)  The PSR does acknowledge that there may be extraordinary cases in which adjustments under both Sections 3C1.1 and 3E1.1 may apply, but states that there has been no information provided to indicate that the instant offense qualifies as an extraordinary case.  The PSR thus gave Mr. Kizer no acceptance of responsibility credit, as anticipated in the plea agreement.  Id.

The information regarding the jail calls was available to the Government when it entered into and filed the Plea Agreement, as the discovery produced to Mr. Kizer by the Government on August 26, 2011, contained the transcripts of these calls.[1]  Thus, the facts in possession of the Government at the time of writing the Plea Agreement included facts about these calls.  The United States  nonetheless agreed not to oppose the acceptance of responsibility adjustment when writing and executing the Plea Agreement.

---

[1] The Rule 16 Discovery Response was not filed by the Government, but Mr. Kizer can provide the Court a copy if required.

Further, the Government has not received new information through the PSR that Mr. Kizer previously engaged in conduct inconsistent with acceptance of responsibility that the Government did not have prior to entering into the Plea Agreement. Moreover, there is no information contained in the PSR indicating that Mr. Kizer engaged in any such further conduct after entering the Plea Agreement. Mr. Kizer thus avers that the PSR has applied the obstruction of justice enhancement and improperly and unfairly used its application note to force Mr. Kizer to show that his case is one of the extraordinary cases where obstruction and acceptance can go hand-in-hand. At the very least, the PSR attempts to invade the province of the Government with respect to Plea Agreement's provisions for the acceptance of responsibility adjustment.

A PSR must accurately report the facts and the legal conclusions that fairly flow from them in order to assist the court in discharging its sentencing responsibilities. United States v. Espalin, 350 F.3d 488, 494 (6th Cir. 2003) (Lawson, J. concurring). In so doing, the PSR is required to be unbiased and unaligned to either side under the Guidelines. Id. In this instance, however, the PSR appears to disagree with the Plea Agreement generally, and for purposes of this argument, the Government's decision not to oppose acceptance of responsibility in the Plea Agreement in exchange for Mr. Kizer's plea. The PSR purports to deny Mr. Kizer credit for acceptance of responsibility and to give him an enhancement for obstruction of justice. This was not the parties' intent when entering the plea, with the Government's full awareness of the jail calls. The Supreme Court has noted that "in our criminal justice system, the Government

retains 'broad discretion' as to whom to prosecute." <u>Wayte v. United States</u>, 470 U.S. 598, 607 (1985).  This discretion partially rests on the "recognition that the decision to prosecute is particularly ill-suited to judicial review."  <u>Id.</u>  "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." <u>Id.</u>  Moreover, a presumption of regularity supports prosecutorial decisions and "in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties."  <u>United States v. Armstrong</u>, 116 S. Ct. 1480, 1486 (1996).

Indeed, the most recent guidance to prosecutors regarding plea bargaining provides that plea agreements should reflect the totality of the defendant's conduct and should seek a plea to the most serious offense consistent with the nature of that conduct likely to result in a sustainable conviction.  Memorandum from Eric H. Holder, Jr., U.S. Att'y. Gen., Department Policy on Charging and Sentencing (May 19, 2010), at 2.[2] Moreover, the U.S. Department of Justice's Principles of Federal Prosecution lays out the considerations prosecutors must take into account in determining whether it would be appropriate to enter into a plea agreement.  Department prosecutors are instructed to weigh all relevant considerations, including:

(1) The defendant's willingness to cooperate in the investigation or

---

[2] <u>Available at</u>: http://sentencing.typepad.com/files/holder-charging-memo.pdf/

prosecution of others; (2) The defendant's history with respect to criminal activity; (3) The nature and seriousness of the offense or offenses charged; (4) The defendant's remorse or contrition and his willingness to assume responsibility for his conduct; (5) The desirability of prompt and certain disposition of the case; (6) The likelihood of obtaining a conviction at trial; (7) The probable effect on witnesses; (8) The probable sentence or other consequences if the defendant is convicted; (9) The public interest in having the case tried rather than disposed of by a guilty plea; (10) The expense of trial and appeal; (11) The need to avoid delay in the disposition of other pending cases; and (12) The effect upon the victim's right to restitution.

Principles of Federal Prosecution, § 9- 27.420.[3] Since the presumption is, in the absence of evidence to the contrary, that prosecutors are properly discharging their duties, it can be presumed that the AUSA in this case properly weighed all of the plea agreement factors above before deciding to offer Mr. Kizer his Agreement.

In addition, it has been recognized that plea bargaining flows from "the mutuality of advantage" to defendants and prosecutors, each with his own reasons for wanting to avoid trial. Brady v. United States, 397 U.S. 742, 752 (1970). For a defendant who sees slight possibility of acquittal, the advantages of pleading guilty and limiting the probable penalty are that his exposure is reduced, the correctional processes can begin immediately, and the practical burdens of a trial are eliminated. Id. For the government there are also advantages such as a more promptly imposed punishment after an admission of guilt may more effectively attain the objectives of punishment; and with the avoidance of trial, scarce judicial and prosecutorial resources are

---

[3] Available at:

http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/27mcrm.htm#9-27.400

conserved for those cases in which there is a substantial issue of the defendant's guilt or in which there is substantial doubt that the government can sustain its burden of proof. Id.  If the government is not permitted to bargain with each defendant based upon the individual facts and circumstances of each case, this mutuality of advantage is lost.  In particular, the government is robbed of its ability to decide how best to allocate the scarce resources of a criminal justice system that simply cannot accommodate the litigation of every serious criminal charge.  See Santobello v. New York, 404 U.S. 257, 260 (1971) ("If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities.")

        The recognition that the decision to prosecute is particularly ill-suited to judicial review applies with even more force to the probation office.  At least this, and other Article III Courts are aware of, understand, and take into account the underlying principles of plea bargaining just discussed.  As such, Mr. Kizer respectfully urges the Court not to be unduly influenced by the PSR's use of the obstruction of justice enhancement to negate the intent of the Plea Agreement provision wherein the Government agreed to refrain  from opposing the acceptance of responsibility adjustment.  Instead, Mr. Kizer requests this Court to respect the position of both counsel and their clients when entering the Plea Agreement in this case, decline to apply the obstruction of justice enhancement and permit Mr. Kizer credit for acceptance of responsibility due to his timely plea.

13

### 4.    Mr. Kizer has no ability to pay a fine or restitution.

At paragraphs 112 through 115 of the PSR, the PSR notes the potential fines and restitution to which Mr. Kizer may be subjected.  The PSR also documents, however, that Mr. Kizer reported that he has no income, assets or liabilities.  (PSR, at ¶ 100.)  In fact, Mr. Kizer owes $40,032.00 to the Ohio Department of Human Services and $2,742.00 in medical debt.  Id. at ¶ 101.  Mr. Kizer also notes that he is represented by assigned counsel, a significant indicator of present inability, and likely future inability, to pay.  USSG § 5E1.2 cmt. n. 3.  Thus the PSR correctly concluded that it does not appear that Mr. Kizer has the ability to pay a fine.  Id. at 103.

The PSR also documented, however, that restitution is mandatory pursuant to 18 U.S.C. § 3663A.  (PSR, at ¶ 80.)  The statute applies in sentencing proceedings for plea agreements relating to charges for, among other offenses, a crime of violence, as described in 18 U.S.C. § 16.  Section 16 defines crime of violence as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16(a), (b).  The Sixth Circuit has not determined whether a violation of the Mann Act constitutes a crime of violence.  Generally speaking, the Government bears the burden of proving that Mr. Kizer engaged in a crime of violence.  See e.g. United States v. Armstead, 467 F.3d 943, 951 (6th Cir. 2006) (government bears burden of proving defendant previously convicted of crime of violence for purposes of career

14

offender guidelines); <u>United States v. Hadley</u>, 431 F.3d 484, 491 (6th Cir. 2005) (same).

Assuming the Government can meet its burden with regard to showing a crime

of violence, the Government also bears the burden of showing the actual loss amount by

a preponderance of the evidence before restitution may be imposed.  <u>United States v.</u>

<u>White</u>, 492 F.3d 380, 418 (6th Cir. 2007).  The PSR provides that no restitution

information has been received.  (PSR, at ¶ 115.)  Mr. Kizer raises this objection that the

Government has failed to carry its burden with respect to the actual loss showing in

order to preserve it.

Assuming the Government will be able to establish actual loss amount by a

preponderance of the evidence, Mr. Kizer respectfully requests the Court to order

nominal periodic payments with no interest because his current financial situation, as

well as that for the foreseeable future, does not  allow for full restitution under a

payment plan.  Under the Mandatory Victim Restitution Act, this Court has discretion

to order nominal periodic payments if "the economic circumstances of the defendant do

not allow the payment of any amount of a restitution order, and do not allow for the

payment of the full amount of a restitution order in the foreseeable future under any

reasonable schedule of payments."  <u>United States v. Callan</u>, 22 F. App'x 434, 452 (6th

Cir. 2001) (unpublished) (quoting 18 U.S.C. § 3664(f)(3)(B)).  In considering the  manner

and schedule of payment, courts are required to consider a defendant's financial

resources, assets, projected income, and financial obligations.  <u>Id.</u> at 452-53 (citing 18

U.S.C. § 3664(f)(2)(A-C).  In this case, Mr. Kizer's financial condition reflects only

liabilities.  (PSR, at ¶ 101.)

Mr. Kizer has a high school education with some college.  Id. at ¶¶ 93-94.   He also has a special certification in carpentry and has worked sporadically in construction and landscaping over the years.  Id. at ¶¶ 95, 97,99.  Thus, there may come a time in the future where Mr. Kizer is able to earn some form of income, even while incarcerated. For now, however, he has had no monthly cash flow or necessary living expenses since incarceration, and this is unlikely to change.  Mr. Kizer thus has no ability to pay full restitution now or in the foreseeable future under any payment plan.  For this reason, Mr. Kizer respectfully requests the Court impose a nominal periodic payment plan with no interest, if the Court orders restitution in this case.

## IV.    Position as to Sentencing

Mr. Kizer respectfully requests the Court to consider the following factors in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. §3553(a).  For all of the reasons addressed in this Sentencing Memo, Mr. Kizer urges this Court to find the appropriate Guidelines range is 41 to 51 months.  The suggested range was calculated as follows:

| | |
|---|---|
| Base offense level (§ 2G1.1(a)(2)) | 14 |
| Offense involved fraud/coercion (§ 2G1.1(b)(1)) | 4 |
| Acceptance of Responsibility (§ 3E1.1) | -3 |
| Total | 15 |

Mr. Kizer respectfully requests the Court to impose a sentence at the low

end of this range, in the area of 42 to 48 months or three and a half to four years incarceration. Mr. Kizer further requests the Court to impose a special assessment of only $100, as he is indigent.

### A.    18 U.S.C. § 3553(a) Factors.

#### (1)    Nature and Circumstances of the Offense.

There is no question that the offense in this case is serious. Mr. Kizer respectfully requests, however, that the Court impose no more than a low end Guidelines sentence. The nature and circumstances of the offense, including Mr. Kizer's fraud and coercion, are wholly taken into account in this case under the commercial sex acts Guidelines. A low end sentence therefore adequately reflects the serious nature and circumstances of the offense, appropriately recognizing all of the 18 U.S.C. §3553(a) factors.

#### (2)    History and Characteristics of the Defendant.

##### (I)    Family Circumstances/Childhood:

Mr. Kizer's history and characteristics are set forth in ¶¶ 82-103 of the PSR. The history shows that Mr. Kizer had a difficult adolescence in that his mother died when he was only 14. Though his father remarried and he was raised by a stepmother, this loss has shaped Mr. Kizer's life, and likely contributed to his history of depression, though it was not discussed at length in the psychological Forensic Report drafted per this Court's order.

##### (ii)    Mental Health/Emotional Health/Substance Abuse

The PSR sets forth sections of the psychological testing results contained in the

Forensic Report drafted for the Court.  The results revealed that Mr. Kizer suffers from depression.  Though Mr. Kizer was also diagnosed with malingering, the psychologist fairly noted in his Report that the simultaneous diagnosis of malingering and legitimate mental disorders are not mutually exclusive.  Though the finding of malingering was listed in the PSR, the psychologist's recognition that malingering could coexists with real mental illness was not.  In any event, it is clear that Mr. Kizer could benefit from psychological counseling geared toward his depressive symptoms.  Mr. Kizer thus requests a recommendation for such services while he is incarcerated.

Though Mr. Kizer does drink alcohol and has used marijuana in the past, he does not appear to currently struggle with any substance abuse issues.

### (3)    Other pertinent 18 U.S.C. §3553(a) factors.

#### (I)    reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense

Mr. Kizer submits that the requested sentence is sufficient in this case.  A low end sentence of three and a half to four years reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense.

#### (ii)    afford adequate deterrence to criminal conduct

It is submitted that the requested low-end sentence will afford adequate deterrence to further criminal conduct.  It is sufficient to show other defendants who commit this type of offense that they will lose their freedom for a significant period of time.

              **(iii)**    **protect the public from further crimes of the defendant**

The requested low-end sentence will adequately protect the public from any further crimes.  This is particularly true since Mr. Kizer has expressed responsibility and remorse for his actions.  (PSR, at ¶ 15.)  Should the Court harbor additional concerns, the Court can impose conditions of supervised release that will adequately protect the public from any further crimes.

              **(iv)**    **provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

The PSR reveals that while Mr. Kizer graduated high school and attended some college (PSR, at ¶¶ 93-94) , he may suffer from borderline intellectual functioning, per the testing done for the Forensic Report ordered by this Court, id. at ¶ 91.  Specifically, the psychological testing revealed that Mr. Kizer may experience difficulty comprehending verbal information that is complex or abstract in nature.  Id.  Perhaps this is why Mr. Kizer never finished college.

Regardless, Mr. Kizer has been able to get a certification in carpentry.  (PSR, at ¶ 95.)  He may well benefit, however, from vocational testing and perhaps training in another field while incarcerated, since so many in the construction business have been driven out of work due to the housing crisis.  Mr. Kizer thus respectfully requests the Court to recommend vocational skills training.  It is submitted that a three and a half to four year sentence would provide Mr. Kizer with needed vocational and correctional treatment in an effective manner.  Consequently, under this factor, the suggested

sentence is sufficient, but not greater than necessary, to achieve sentencing purposes.

**(4)    The kinds of sentences available.**

Mr. Kizer's requested sentence is based upon the arguments set forth above in this sentencing memo.  Mr. Kizer's statutorily mandated maximum sentence is 10 years. (PSR, at ¶ 104-105.)

**(5)    The sentencing guideline range.**

The sentencing Guideline range has been addressed above.  Though Mr. Kizer vehemently disagrees with the method of calculation, the PSR also provides an alternative range at ¶ 105.

**(6)    The need to avoid unwarranted disparities.**

Counsel is aware that similarly situated defendants in this district have received sentences in excess of Mr. Kizer's requested sentence.  In this instance, the Court can properly take into account all of the facts of Mr. Kizer's case, his character, his history, and his need for mental health counseling and vocational training to fashion a sentence that adequately addresses all of the statutory factors.  Accordingly, it is submitted that the suggested 42-to-48 month sentence in this case will not create unwarranted disparities between similarly situated defendants.

**(7)    The need to provide restitution to any victims of the offense**.

Pursuant to the legal arguments regarding restitution raised above at pages 12-14, Mr. Kizer respectfully requests the Court impose a nominal periodic payment plan with no interest for any amount of restitution this Court may impose upon him.

**B.      Requests for Recommendations.**

Mr. Kizer requests that the Court recommend to the Bureau of Prisons that he be housed as close to Memphis, Tennessee, as possible so that he can maintain family contacts.  Mr. Kizer also requests a recommendation for mental health counseling for his depressive symptoms and a recommendation for vocational training while he is incarcerated.

**VI.    Conclusion**

For the foregoing reasons and for the reasons that will be more fully developed at the sentencing hearing, Mr. Kizer respectfully requests a sentence between 42 and 48 months.

Respectfully submitted,
STEPHEN B. SHANKMAN
FEDERAL DEFENDER

*s/ RANDOLPH W. ALDEN*
Assistant Federal Defender
200 Jefferson Avenue, Suite 200
Memphis, TN 38103
(901) 544-3895

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing Defendant's Position With Regard to Sentencing factors and Sentencing Memorandum was forwarded by electronic means via the Court's electronic filing system to Mr. Jonathan Skrmetti, Assistant U.S. Attorney, 167 N. Main, Suite 800, Memphis, TN 38103;

this 9th day of January, 2012.

*s/ RANDOLPH W. ALDEN*
Assistant Federal Defender

21