**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:10-cr-20385-SHM |
| | ) | |
| CHARLES KIZER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

_____

**UNITED STATES' RESPONSE TO DEFENDANT'S
POSITION ON SENTENCING FACTORS**
_____

Comes now the United States, by and through undersigned counsel, and submits this response to the Defendant's Position on the Sentencing Factors and Applicable Law. See Document 68. The Defendant raises several legal objections to the Presentence Investigative Report ("PSR") concerning what facts constitute relevant conduct, the vulnerable victim enhancement, and the obstruction of justice enhancement. The United States addresses those issues herein.

I.  **Sentencing Factors in Dispute**

   1.  **The PSR correctly includes facts related to threats of force, physical abuse, and sexual abuse as relevant conduct relating to the conviction of 18 U.S.C. §2421.**

On August 31, 2011, the Defendant pled guilty to violating one count of 18 U.S.C. §2421 for knowingly transporting A.W. in interstate commerce from Memphis, Tennessee, to West Memphis, Arkansas, with the intent that A.W. engage in prostitution. Relevant conduct

1

that can be considered in determining the guideline range for this offense includes conduct "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG §1B1.3(a)(1).

> A. *The Cross-Reference in §2G1.1 Puts Abusive Behavior by a Violent Pimp Squarely in the Realm of Relevant Conduct*

USSG §2G1.1 includes a cross-reference providing that "[i]f the offense involved conduct described in 18 U.S.C. §2241(a) or (b) or 18 U.S.C. §2242, apply §2A3.1". USSG §2G1.1(c)(1). Such conduct includes "causing another person to engage in a sexual act with another person by: (i) using force against the victim [or] (ii) threatening or placing the victim in fear that any person will be subject to death, serious bodily injury, or kidnapping . . ." USSG §2G1.1 cmt. n.4(A). By way of example, Application Note 4(a) of §2G1.1 states that the cross reference applies where a defendant used or brandished a dangerous weapon or where the ability of a victim to appraise or control conduct was substantially impaired by drugs.

"The clear intent behind §2G1.1(c)(2)'s cross-referencing to the sexual abuse guideline, §2A3.1, is to attach the proper penalty for the underlying sexual conduct." United States v. Angle, 234 F.3d 326, 345 (7th Cir. 2000). Therefore, the relevant conduct includes more than the simple transportation across state lines. A pimp's "use of violence or fear to coerce [a girl] to remain with him as an employee [is] synonymous with coercing her to continue to perform sexual services so he [can] recover the proceeds." United States v. Madison, 477 F.3d 1312, 1317 (11th Cir. 2007) (applying cross-reference to §2A3.1 in case in which defendant was

sentenced under §2G1.3(c)(3) for conspiracy to transport minor for purposes of prostitution, in violation 18 U.S.C. § 2423(e)).[1]

The Third Circuit agreed with the Eleventh Circuit's reasoning in Madison when it similarly affirmed application of the §2G1.3(c)(3) cross-reference to §2A3.1. United States v. Williams, 428 F. App'x 134, 141 (3rd Cir. 2011) (unpublished). The Third Circuit looked specifically at a defendant's conduct in enticing women and then enforcing his rules through threats and violence and by keeping all proceeds of the prostitution. "[G]iven such techniques, which are essentially synonymous with a pimp's coercing a woman to continue performing sexual services so he could recover the proceeds, there need not be proof that his use of those techniques forced her into particular sex acts on specific occasions." Id. (internal citation and quotation marks omitted).

In another unpublished decision, the Third Circuit found that the District Court did not err in cross-referencing from §2G1.1(c)(1) to §2A3.1 in a case in which a defendant argued that the acts of violence against the victims should be severed from the intent to prostitute them. United States v. Scott, 434 Fed.Appx. 103, 106 (3rd Cir. 2011) (unpublished). In Scott, the defendant and his co-conspirators "routinely lured minors and young women into prostitution, and then forced them to continue prostituting by creating an environment of fear and dependence through the use of threats of violence, actual violence, and various forms of manipulations against them." Id.

### B. The Defendant Relied on a Climate of Fear and Violence

Like the defendants in Madison, Williams, and Scott, Defendant Charles Kizer relied on threats of violence and a climate of fear to keep A.W. working for him. That climate of fear and

---

[1] USSG §§ 2G1.3 and 2G1.1 both have a cross reference to §2A3.1 if the offense involved conduct described in 18 U.S.C. §2241(a) or (b) or 18 U.S.C. §2242.

violence traveled with the Defendant and A.W. from Knoxville to Memphis, then across the bridge to West Memphis, Arkansas. The climate of fear remained almost tangibly present until A.W. found refuge with Memphis police officers. This conduct is therefore relevant conduct as it occurred during the commission of the offense and in preparation for the offense. See USSG §1B1.3(a)(1).

From the beginning, the Defendant created a climate of fear that kept A.W. under his control. The United States will prove by a preponderance of the evidence that the Defendant lured and enticed A.W. with the promise of drugs to lure her in to initially working for him as a prostitute, then immediately resorted to threats of violence to keep A.W. compliant as he transported her to Memphis and continued exploiting her throughout the course of her captivity. This climate of fear pervaded the Defendant's parasitic relationship with A.W. and secured her compliance over their entire time together, including during the trip to West Memphis.

Evidence at sentencing will show that near the beginning of this exploitation, another prostitute that worked with and for the Defendant showed A.W. a scar on her arm and told her that the Defendant had cut her. Evidence will further show that while A.W. stayed at the Defendant's home, she lived in constant fear under his controlling and isolating rules. A.W. was not allowed to leave the house unless the Defendant was with her. The Defendant also showed A.W. a video recording of a funeral of a woman the Defendant claimed used to work for him as a prostitute. The Defendant warned A.W. not to let this happen to her. At times A.W. expressed the desire to leave the Defendant and return home to Knoxville, but the Defendant refused to relinquish his control over her. The Defendant constantly reminded A.W. that he was carrying a gun, instantiating an example provided by Application note 4(A) to

§2G1.1 of behavior necessitating the cross-reference. The evidence will show that the Defendant also kept a hatchet in the passenger compartment of his vehicle to further intimidate A.W.

It was fear of serious bodily harm that kept A.W. working for the Defendant, including when the Defendant took across her state lines to West Memphis, Arkansas to prostitute herself for his financial gain. A.W. would not have continued engaging in sexual acts for the Defendant's financial benefit if she felt she had a choice. The threats of force and fear of serious bodily injury are therefore relevant conduct to the offense of conviction. As such, the four-level enhancement concerning whether the commercial sex act involved fraud or coercion is applicable. See USSG §2G1.1(b)(1). "Coercion includes any form of conduct that negates the voluntariness of the victim." USSG §2G1.1 cmt. n.2. A.W.'s fear, which the Defendant deliberately and constantly induced, ensured that A.W. would feel like she did not have a choice as to whether or not she had to prostitute herself for the Defendant's benefit.

In addition to showing that the Defendant used threats of force and violence to maintain control of A.W. the entire time he exploited her, the evidence will additionally show that those threats were ultimately realized when the Defendant choked and beat A.W., then forced her to take hydrocodone, then raped her. Perhaps not coincidentally, this physical and sexual abuse occurred just days before A.W. called 911 to be rescued from the Defendant. The Defendant saw A.W. speaking to another pimp after he dropped her off on the track. He drove her back to his house, choked her violently in his car, and dragged her into his house. To further demonstrate his power and her powerlessness, the Defendant proceeded to rape A.W. The Defendant proved that his constant threats of force and fear of harm or serious bodily injury was

validated by the defendant's actions.  See United States v. Evans, 285 F.3d 664, 672 (8th Cir. 2002) (rejecting defense argument that physical assault and rape did not constitute part of the Mann Act offense and applying cross-reference to §2A3.1 in Mann Act prosecution where defendant physically assaulted and raped victim).  In an unpublished decision, the Ninth Circuit upheld cross-referencing a Mann Act conviction to §2A3.1 because the "[t]he pattern of conduct by which [the defendant] operated his prostitution enterprise included the use of physical sexual force by the defendant personally, nonconsenually."  United States v. Flavors, 15 Fed.Appx. 491, 495 (9th Cir. 2001) (unpublished) (internal quotation marks omitted).

As the climate of fear and the Defendant's threats of violence are inextricably intertwined with the offense of conviction, evidence relating to that climate of fear and those threats of violence – including the realization of those threats – constitutes "acts . . . committed . . . during the commission of the offense of conviction" and thus should be taken into account as relevant conduct under §1B1.3(a)(1).

Additionally, the Defendant nearly incapacitated A.W. with crack cocaine to keep her compliant and completely dependent on him in order to continue profiting from his exploitation of her.  This mirrors another example provided in Application Note 4(A) to §2G1.1, that of "a case in which the ability of the victim to appraise or control conduct was substantially impaired by drugs or alcohol."

### C. The Threats, Attacks, and Rape Occurred During the Offense Conduct

Both in the factual basis for his guilty plea and in his statement to the Probation Office accepting his criminal responsibility, the Defendant acknowledged that

> From on or about August 1, 2010, to on or about September 1, 2010, . . . I transported A.W., an 18 year old female, to various places through Tennessee

and elsewhere for the purpose of having her engage in prostitution.  I also admit that during that time, I transported A.W. from Memphis, Tennessee, to West Memphis, Arkansas with the explicit intent of delivering A.W. to a truck stop in West Memphis to engage in prostitution in violation of Title 18, United States Code, Section 2421.

PSR ¶ 15.  This statement acknowledges that a criminal scheme to deliver A.W. to engage in acts of prostitution encompasses the offense conduct.  The threats, violence, and rape were all essential parts of that scheme through which the Defendant benefitted from A.W.'s commercial sex acts by keeping her entirely under his control.

"The court is given wide discretion in what it may consider as relevant in implementing §1B1.3."  United States v. Hough, 276 F.3d 884, 898 (6th Cir. 2002).  As the Hough court noted, "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. §3661.  The decisions of numerous courts cited above in Section I.1.A demonstrate that a Mann Act Guidelines calculation takes into account more than the simple act of crossing state lines, and that threats and violence directed at a Mann Act victim during the course of a scheme of prostitution activity should be taken into account in calculating an appropriate sentence.  Because the Defendant's own statement indicates that the Mann Act violation occurred in the context of a broader prostitution scheme, the Court in determining an appropriate sentence should take into account the nature and character of that scheme and all of the Defendant's conduct associated with it.

### 2. The Vulnerable Victim Enhancement Applies

The Guidelines provide for a two-level enhancement when a defendant "knew or should have known that a victim is "unusually vulnerable due to age, physical or mental condition, or . . . otherwise particularly susceptible to the criminal conduct." USSG § 3A1.1 cmt. n.2.

The evidence at sentencing will show that A.W. was unusually vulnerable due to her age, mental condition, and drug dependency. A.W. was eighteen years old when the defendant engaged in a scheme to lure, entice, compel and coerce her to work for him as a prostitute. A.W. was barely an adult when the Defendant met her, and the evidence will show that she had the mental capabilities of someone much younger. See United States v. Robinson, 436 F. App'x 82, 83 (3d Cir. 2011) (unpublished) (applying vulnerable victim enhancement where Mann Act defendant victimized minors with, inter alia, troubled personal and familial circumstances and cognitive impairments where those troubled circumstances were not incidental to the victimization).

The evidence will show that A.W. was unusually susceptible to the Defendant's manipulation and violent coercion for several reasons: she had a troubled personal life, she was cognitively impaired, and she was addicted to crack cocaine. The Defendant knew and took advantage of A.W.'s addiction by initially enticing her with drugs. The evidence will show that the Defendant continued to provide A.W. with crack cocaine to keep her compliant. In a case with similar facts, the Eighth Circuit found the vulnerable victim enhancement appropriate where a defendant convicted of violating the Mann Act took advantage of a victim's addiction by "encouraging and contributing to her addiction by furnishing her with drugs to prevent her from leaving and moving her in with him . . . ." United States v. Evans, 272 F.3d 1069, 1095 (8th Cir. 2002). Therefore, the vulnerable victim enhancement is applicable due to A.W.'s age,

cognitive ability, and drug dependence that the Defendant manipulated to keep A.W. under his control.

### 3. Application of the Obstruction of Justice Enhancement Is Appropriate

The PSR correctly applied the two-level enhancement for obstruction because of the Defendant's jail calls while he was incarcerated on state charges for kidnapping A.W. The recorded calls capture the Defendant's attempts to secure his release from state custody by ensuring that A.W. did not show up for a hearing. As the Defendant's kidnapping charge arose from acts that relating to the acknowledged prostitution scheme encompassing the charged offense, it should be considered relevant conduct or a closely related offense. USSG §3C1.1; see cmt n.1. This conduct clearly falls under conduct covered in obstruction. See USSG § 3C1.1 cmt. n.4(a).

The phone calls the Defendant made in an attempt to prevent A.W. from appearing in state court occurred in September 2010; the guilty plea did not occur until August 31, 2011. Although the Defendant initially tried to obstruct the investigation and prosecution, his plea almost a year later demonstrated an acceptance of responsibility. Applying the two-level obstruction enhancement does not eviscerate the intent of the parties because nothing in the plea agreement addressed an enhancement for obstruction of justice. Document 60.

The United States does not disagree with the Defendant insofar as at the time of the guilty plea, the United States expected the Defendant to be eligible for acceptance of responsibility credit. At that time, this could have been an "extraordinary case[ ] in which adjustments under both §§3C1.1 and 3E1.1 may apply." USSG § 3E1.1 cmt. n.4. "Sixth Circuit case law interpreting this provision [acceptance of responsibility] has consistently

granted district courts great leeway when making this determination." United States v. Gregory, 315 F.3d 637, 640 (internal citation omitted). In Gregory, as in the present case, a defendant's obstructive conduct predated the indictment and plea agreement. The Sixth Circuit adopted the Ninth Circuit's view in United States v. Hopper, 27 F.3d 378 (9th Cir. 1994) that "[c]ases in which obstruction is not inconsistent with an acceptance of responsibility arise when a defendant, although initially attempting to conceal the crime, eventually accepts responsibility for the crime and abandons all attempts to obstruct justice." Id. (internal citations omitted).

The United States notes that the Defendant has since engaged in conduct inconsistent with the acceptance of responsibility. In a letter to the Court filed on November 15, 2011, the Defendant wrote "Your Honor, I'm the vitmin [sic] here" and proclaimed "there is uncontradicted and unimpeached evidence of my innocent [sic], there never should have been a federal case, after my dismissal in the State case." Document 63-1 at 4, 11. The Court gave the Defendant an opportunity to disclaim authorship of the letter at the subsequent hearing on what the Court construed as a pro se motion for new counsel. The Defendant declined the opportunity and insisted that he was responsible for it.

Although the United States agreed not to oppose credit for acceptance of responsibility, the plea agreement explicitly states that "[t]he Defendant understands that if the United States receives information between the signing of this agreement and the time of the sentencing that the Defendant has previously engaged in, or if he engages in the future, in conduct inconsistent with the acceptance of responsibility, including, but not limited to, participation of any additional criminal activities between now and the time of sentencing, this position could change." Document 60. Protestations of innocence constitute conduct inconsistent with the

acceptance of responsibility.  See United States v. Abboud, 308 F. App'x 977, 981 (6th Cir. 2009) (unpublished) ("an expression of innocence is inconsistent with acceptance of responsibility").

Because the Defendant engaged in conduct inconsistent with the acceptance of responsibility, the United States will not object to the absence of such credit in light of the Defendant's post-plea statements asserting his innocence.

In addition, the United States notes that the Defendant denies that he sexually assaulted A.W.  Document 68 at 4.  The United States expects to introduce proof to the contrary at the sentencing hearing.  Falsely denying relevant conduct disqualifies a defendant from receiving Guidelines credit for acceptance of responsibility.  United States v. Cardona, -- F. App'x ---, 2011 WL 6756981 at *3 (6th Cir. Dec. 23, 2011) (unpublished) ("The Guidelines suggest that a reduction for acceptance of responsibility may be appropriate if the defendant truthfully admitted the conduct comprising the offense(s) of conviction, and truthfully admitted or did not falsely deny any additional relevant conduct.") (internal quotations and brackets omitted).

## II.    Position as to Sentencing

The United States does not object to the Guideline calculation in the PSR.  A three-level credit for acceptance of responsibility brings the total offense level to 39.  The Defedant falls into criminal history category IV.  The Guideline range for the Defendant is thus 360 months to life.  As the statutory maximum for a conviction under 18 U.S.C. § 2421 is dramatically below the Guideline range, the United States respectfully requests that this Court impose a sentence of 120 months.  The sexual exploitation of vulnerable young women for profit urgently demands deterrence, while the principles of just retribution insist that a sentence at the statutory

maximum is the only appropriate sentence available for the Defendant's extraordinarily serious conduct. In addition, a sentence at the statutory maximum will afford society a needed respite from the Defendant's continuous streak of dangerous and violently antisocial behavior.

### III. Conclusion

The United States respectfully submits this memorandum for this Court's consideration in the instant case.

                          Respectfully submitted,

                          EDWARD L. STANTON, III
                          UNITED STATES ATTORNEY

By:    s/ Jonathan Skrmetti
         Jonathan Skrmetti
         Assistant United States Attorney
         167 N. Main, Suite 800
         Memphis, Tennessee 38103
         (#423712 Connecticut)

         THOMAS E. PEREZ
         ASSISTANT ATTORNEY GENERAL

         s/ Saeed Mody
         Saeed Mody
         Trial Attorney
         U.S. Department of Justice
         Civil Rights Division
         601 D St NW, Suite 5200
         Washington, D.C. 20004
         (#4368080 New York)

## **CERTIFICATE OF SERVICE**

I, Jonathan Skrmetti, Assistant United States Attorney, hereby certify that a copy of the foregoing **Notice** has been sent via the Court's electronic filing system to:

**Randolph W. Alden**
FEDERAL PUBLIC DEFENDER
200 Jefferson Ave.
Ste. 200
Memphis, TN 38103
901-544-3895
Email: randy_alden@fd.org

This 25th day of January, 2012.

/s/ Jonathan Skrmetti
Jonathan Skrmetti
Assistant United States Attorney